**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

BRITE VUE, L.L.P.,

Plaintiff,

v.

TOWNSHIP OF COLUMBUS,

Defendant,

and

ELLER MEDIA COMPANY, INC.,

Intervenor / Third-Party Plaintiff,

v.

BRITE VUE, L.L.P.,

Third-Party Defendant.

Civil No. 00-1877 (JRT/AJB)

**MEMORANDUM OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

---

Marc D. Simpson, LEONARD STREET AND DEINARD, Suite 2300, 150 South Fifth Street, Minneapolis, MN, 55402, for plaintiff/third-party defendant.

Peter B. Tiede and Louise Toscano Seeba, MURNANE, CONLIN, WHITE & BRANDT, 1800 Piper Jaffray Plaza, 444 Cedar Street, St. Paul, MN, 55102, for defendant.

David K. Nightingale and Marvin A. Liszt, BERNICK AND LIFSON, P.A., 1200 The Colonnade, 5500 Wayzata Boulevard, Minneapolis, MN, 55416,1270, for intervenor/third-party plaintiff.

FILED DEC 0 4 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. DEC 0 4 2001
DEPUTY CLERK

This action involves a dispute over the placement of two outdoor advertising signs along a stretch of Interstate 35 in the Township of Columbus. Plaintiff Brite Vue, L.L.P ("Brite Vue") claims it is entitled to an interim use permit from the Township to erect an outdoor advertising sign on its property without any condition that the sign be constructed at least 750 feet from the nearest permitted outdoor advertising sign. Intervenor and third-party plaintiff Eller Media Company ("Eller") claims it is entitled to construct its sign free and clear from interference with the sign on the Brite Vue property.

This matter is before the Court on cross-motions for summary judgment. For the reasons that follow, the Court grants the motions of the Township and Eller for summary judgment and denies Brite Vue's motion for summary judgment.

## BACKGROUND

In 1999, the Township was in the process of rezoning a portion of Interstate 35 from Residential to Freeway Development A and B Districts. This zoning change would permit properties within these districts to be used for large off-premise outdoor advertising structures (a/k/a billboards). On November 22, 1999, the Township passed a Resolution Authorizing Acceptance of Interim Use Permit Applications in the Freeway Development Districts ("Resolution 99-9"), which provides:

> The Town of Columbus Board of Supervisors hereby authorizes Town staff to accept applications for Interim Use Permits for property proposed to be included in the Freeway Development-A and Freeway Development-B Districts, and to process those applications under the standards of the proposed Freeway Development District Ordinance so that, if the interim uses conform to the Town's land use controls, the interim use permits may be granted upon the property's rezoning to Freeway Development-A or Freeway Development-B.

Resolution 99-9 was published on December 2, 1999 and the Township began accepting interim use and sign permit applications the day after. On December 3, 1999, DeLite Outdoor Advertising, Inc. ("DeLite") submitted an Application for a Sign Permit to the Township for a location on property owned by Brite Vue.[1] On that same day and prior to DeLite, Eller submitted an Application for a Sign Permit for a location on property owned by John and Kimberly Taylor.

Upon filing their sign permit applications, the Township clerk informed representatives from both DeLite and Eller that the filing of an interim use permit application was also required. Eller submitted its interim use application that same day, whereas, DeLite did not submit its application until December 6, 1999. It is undisputed that the two signs, as proposed by DeLite and Eller, were only 520 feet apart (edge of sign to edge of sign) from each other.

On January 11, 2000, the Township conducted public hearings on the sign permit and interim use permit applications for the Taylor and Brite Vue properties, among many other applications. On January 26, 2000, the Township met again to consider the applications. At this meeting, the Township granted the sign permits sought by Eller and DeLite with the condition that the billboard signs be at least 750 feet apart from each other. Shortly thereafter, the Township realized that the action they had taken was not authorized because the rezoning of Districts A and B had not yet been completed.

---

[1] Brite Vue is a family limited partnership. They own the land that is at issue in this case, which is also referred to in the record as the Houle property.

On February 16, 2000, the Township passed the ordinance for the Freeway Development A and B Districts. Town Code § 7B-302A, "Large Off-Premises Signs on Commercially-Zoned Properties in I-35 Corridor." That same day, the Township again approved the sign and interim use permits to Eller and DeLite with the condition that the signs be 750 feet from the nearest outdoor advertising sign. According to Brite Vue, this action was taken too late because the 60-day time limit for which the Township had to act under Minnesota law expired on February 4, 2000. Brite Vue also contends that the Township's January 26, 2000 action was ineffective because the area in question had not yet been rezoned to permit the construction of the signs at issue. Brite Vue thus claims that because the January 26, 2000 approval was ineffective and the February 16, 2000 approval was too late, its permit application was approved by operation of law on February 4, 2000 without the 750-foot spacing requirement.

On April 12, 2000, the Township met to discuss the spacing conflict that had arisen between the two signs. After discussing the possible alternatives on how to proceed, the Township passed a motion to place a moratorium on the construction of the two signs, "pending either a mutual agreement by the parties to be submitted in writing or in the alternative—a judge's order deciding on the placement of those signs." April 12, 2000 Meeting Notes, Exhibit F.

After the parties were unable to resolve the dispute, Brite Vue brought this action against the Township seeking, among other things, a declaratory judgment that it is entitled to an interim use permit free of the 750-foot spacing requirement. Thereafter, Eller intervened as a third-party plaintiff, seeking a declaratory judgment that it is entitled

to construct its sign free from interference with the Brite Vue sign and that the Township's first-come, first served policy for considering applications is not arbitrary and capricious.

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is appropriate where, as here, the case turns on the application of a statute to a set of undisputed facts. *United Food & Commercial Workers Int'l Union-Indus. Pension Fund v. G. Bartusch Packing Co.*, 546 F. Supp. 852, 858 n.8 (D. Minn. 1982).

### II. Standing

As a threshold matter, the Court addresses the Township's argument that Brite Vue lacks standing to bring this action because DeLite, not Brite Vue, applied for the permit in question. In order to satisfy Article III's standing requirements, a plaintiff must demonstrate that: "1) it has suffered an 'injury in fact'; that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of*

*the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)); *National Solid Waste Mgmt. Assoc. v. Williams,* 146 F.3d 595, 598 (8th Cir. 1998).

The Court is persuaded that Brite Vue has standing to challenge the Township's actions concerning the interim use permit application. Brite Vue signed the interim use permit application as owner and has a personal stake in the outcome of this case. The conflict that arose out of the 750-foot spacing requirement and the Township's subsequent imposition of a moratorium prevents Brite Vue from obtaining lease revenues from construction of a sign on its property. The loss of revenues is directly traceable to the Township's actions and the injury will likely be redressed by a favorable decision. Specifically, a decision in Brite Vue's favor will lift the moratorium, allow erection of the sign and enable Brite Vue to begin collecting revenues from the lease. Under these circumstances, the Court finds that Brite Vue satisfies the tripartite test of Article III and thus has standing to pursue this action. *See also Stansell v. City of Northfield,* 618 N.W.2d 814, 818 (Minn. Ct. App. 2000); Minn. Stat. § 462.361 (any "person aggrieved" by a land use decision may have decision reviewed in court).[2]

---

[2] At oral argument, it became apparent that the Township's concern is not so much with Brite Vue's standing but rather with DeLite's absence from this litigation. Specifically, the Township voiced concern over the possibility that because DeLite is not a party to this action, it could bring a separate lawsuit challenging the same actions at issue in this case if it does not like the Court's ruling. While this is a legitimate concern, it seems that the principles of collateral estoppel could apply in such circumstances. *Willems v. Commissioner of Pub. Safety,* 333 N.W.2d 619, 621 (Minn. 1983) (outlining elements of collateral estoppel and noting that it applies to a party who is in privity with a party to a prior adjudication).

**III. Minn. Stat. § 15.99**

The central dispute in this case revolves around the following statutory language contained in Minn. Stat. § 15.99, subd. 2:

> Except as otherwise provided in this section and notwithstanding any other law to the contrary, an agency must approve or deny within 60 days a written request relating to zoning . . . . Failure of an agency to deny a request within 60 days is approval of the request. If an agency denies the request, it must state in writing the reasons for the denial at the time that it denies the request.

Although a governmental agency can extend this period an additional 60 days if the agency provides the applicant with written notice before the initial 60-day period expires, *see* Minn. Stat. § 15.99, subd. 3(f), the record is clear that the Township did not take advantage of this provision of the statute. Accordingly, the Court's analysis concerning the Township's compliance with § 15.99 is limited to subdivision 2.

The record before the Court reveals that DeLite submitted a completed application for an interim use permit on the Brite Vue property on December 6, 1999. The sixtieth day from that date is February 4, 2000. On January 26, 2000, the Township approved DeLite's application for a sign permit with the condition that the sign be placed at least 750 feet from the nearest sign. However, as the Township subsequently discovered, the approval of the permits was not effective because the rezoning had not yet occurred. Accordingly, the Township re-issued the permits on February 16, 2000, the same day that the Township passed the ordinance rezoning the land, but after the February 4 deadline had passed.

As previously mentioned, Brite Vue contends that because the Township's approval of the permit on January 26, 2000 was ineffective and the February 16, 2000

approval was made after the February 4, 2000 deadline passed, it is entitled to an interim use permit by operation of law to construct and maintain a billboard on its property free of the 750-foot spacing requirement. To support this argument, Brite Vue relies on the operation of law provision in subdivision 2 of § 15.99 which states that the "[f]ailure of an agency to deny a request within 60 days is approval of the request."

The Township advances three separate arguments why Brite Vue is not entitled to the relief it seeks based on the operation of law provision contained in subdivision 2. First, the Township argues that it satisfied the plain terms of the statute when it unquestionably approved the permit application on January 26, 2000. That the action pre-dated the re-zoning and was thus in violation of its then existing ordinance, the Township argues, is irrelevant for purposes of the Township's compliance with § 15.99. Alternatively, the Township contends that the 60-day time period did not begin to run until it became legally possible to do so and the Township granted the permit on February 16, 2000, the first day legally possible. Finally, the Township argues that even if the Township did not grant or deny the permit as required under § 15.99, the operation of law provision in the statute does not permit the Court to grant a permit that is in violation of law.

For several reasons, the Court finds that application of the operation of law provision in § 15.99 is inappropriate under the facts and circumstances of this case. First, the Court notes that the Township did comply with the plain terms of the statute. The statute requires that an agency "must approve or deny within 60 days a written request

relating to zoning." The Township clearly approved the permits on January 26, 2000, nearly a week before the 60-day period expired.

It is true that § 15.99 does not expressly address whether the approval must be legally effective, which is perhaps the fatal flaw of Brite Vue's position. While the Court by no means condones the action of the Township in this case or suggests that subdivision 2 empowers government agencies to take illegal actions, the Court believes that remedies other than those contained in § 15.99 were intended to apply in circumstances similar to those presented here. In this case, for instance, the Township's error was in approving the permits before the rezoning was complete. This error was not in violation of the plain language of subdivision 2 but rather was in violation of its then existing zoning ordinance. Consequently, had construction of the signs begun prior to the rezoning, aggrieved persons could have mounted a legal challenge against the Township for violating its own zoning ordinance.

The Court is also convinced that the legislature did not intend for the "deemed approved" provision of § 15.99 to operate under the factual circumstances presented in this case. As the Minnesota Court of Appeals made clear in *Manco of Fairmont, Inc. v. Town Board of Rock Dell Township*, 583 N.W.2d 293 (Minn. Ct. App. 1998), "the underlying purpose of Minn. Stat. § 15.99 is to keep government agencies from taking too long in deciding [zoning] issues like the one in question." *Id.* at 296. The "deemed approved" provision contained in § 15.99 is designed to remedy those situations where an agency delays or fails to act on an application. This is clearly not the situation presented in this case. If anything, the Township erred by acting too quickly.

Courts in other jurisdictions, interpreting state statutes analogous to § 15.99, have reached the same conclusion under similar circumstances. *Allied Realty, Ltd. v. Borough of Upper Saddle River*, 534 A.2d 1019 (N.J. Sup. Ct. 1987); *In re Emmanuel Baptist Church*, 364 A.2d 536 (Pa. Cmwlth. 1976). In *Allied Realty*, the plaintiff wished to develop commercially-zoned property on Lot 1 and a portion of Lot 3. 534 A.2d at 1020. The Board granted plaintiff's site plan approval, but stated in its findings that "the application, by its own choice, has determined that it wishes to consolidate Lots 1 and 3 and to construct a commercial building utilizing all of the commercially-zoned property *and not to use the balance of the lot for any structures*. *Id.* (Emphasis added.) Seven years later, plaintiff sought approval to develop a subdivision on the remaining residentially-zoned land on Lot 3. *Id.* On July 16, 1985, three days after the plaintiff submitted his application for subdivision approval, the Board denied plaintiff's application on the basis that the Board's 1978 site approval was conditioned on their being no further development, residential or commercial, on the remaining portion of the land. *Id.*

The plaintiff challenged the July 16, 1985 denial, in part, on the basis that the Board erred in its determination of the preclusive effect of the 1978 resolution. The plaintiff further argued that his application ought to be approved by operation of law because the board took longer than statutorily permitted to process his application. The court agreed with plaintiff that the July 16, 1985 action denying the application on the basis of the 1978 resolution was erroneous. However, the court rejected plaintiff's second argument that it was entitled to his permit by operation of law by reason of the

Board's dilatory conduct, finding instead that the Board's July 16, 1985 determination, although erroneous, complied with the terms of the statute. Specifically, the court concluded:

> The overriding and critical fact is that the Board made its determination and rendered its decision at its meeting on July 16, 1985. At that meeting, there was substantial debate and considerable deliberation concerning the preclusive effect of the Board's 1978 resolution. As we took pains to note in our recitation of the facts, the Board's denial, although ultimately a mistaken one on this record, was clearly and unequivocally conveyed to Allied and its attorney. In unmistakable terms, Allied was advised that its application was denied.
>
> In sum, there is no hint of bad faith, sharp practice, overreaching or dilatory conduct on the part of the Board. The record is totally devoid of any evidence of prevarication or obstructionism by the municipality. Rather, the course of events created by the parties bespeaks innocent inadvertence and misapprehension. The remedy of automatic approval under the circumstances here would be disproportionately weighed against the public interest.

*Id.* at 1024-25. Likewise, in *Emmanuel*, the court declined to apply the deemed approved language where the Board denied a church's application for a special exception permit within the statutorily prescribed time period, but failed to do so at a public meeting in violation of the state's open meeting law:

> The "deemed approved" rule as set forth above is designed we believe to assure applicants of timely decisions on their zoning applications, and zoning boards under this rule can no longer effectively frustrate or prohibit lawful land uses by refusing to act on zoning applications. But, where some action has been taken within 45 days but rendered invalid only because of a board's failure to adhere to the Sunshine Law, the purpose of the 45-day rule is not furthered by granting the application without any consideration as to the validity of the use and thus penalizing the Township and jeopardizing its land use scheme. The Township has acted in good faith, if mistakenly, and further penalization is not required.

364 A.2d at 541-42. The court thus determined that rather than invoke the deemed approved language of the statute, the proper remedy was to remand the action to the Board where valid action could then be taken at an open meeting held in compliance with the provisions of the Sunshine Law. *Id.* at 542.

In this case, a remand is unnecessary because the Board has already corrected its original error by approving the permits on February 16, 2000, the same day the rezoning was accomplished. Moreover, as in *Allied Realty* and *Emmanuel,* there is simply no evidence of bad faith or dilatory conduct on the part of the Township in this case. Rather, the course of events more resembles an innocent mistake. Under these circumstances, the Court does not find that the automatic approval provision contained in § 15.99 was intended to apply under the facts of this case.

The Court is unpersuaded by additional arguments advanced by Brite Vue. Specifically, Brite Vue contends that § 15.99 permits the Court to issue Brite Vue a permit free of the 750-foot mandatory spacing requirement even though the rezoning had not yet occurred by February 4, 2000. To support this argument, Brite Vue relies on language in subdivision 2 which states that an agency must approve or deny an application "**notwithstanding any other law to the contrary**." (Emphasis added.)

Brite Vue's argument actually supports the Township's position. Under Brite Vue's reasoning, the Township's January 26, 2000 approval of the application with the 750-foot spacing requirement would be effective. There is no question that the only flaw with the Township's actions on that day was that the rezoning had not yet occurred. However, under Brite Vue's interpretation of § 15.99, the Township could grant the

application in violation of then existing law. The grant of the application by operation of law on February 4, 2000 is second in line to the Township's January 26, 2000 grant with the 750-foot spacing requirement. Thus, Brite Vue's reliance on the "notwithstanding any other law to the contrary" clause in § 15.99 is unpersuasive.

Finally, it is not clear that Brite Vue would escape the mandatory 750-foot spacing requirement set forth in the new ordinance[3] even if the Court agreed with Brite Vue that it was entitled to the permit by operation of law on February 4, 2000. The Minnesota Court of Appeals' decision in *Gun Lake Assoc. v. County of Aitkin*, 612 N.W.2d 177 (Minn. Ct. App. 2000) is instructive on this point. In that case, the county planning commission conditionally granted the plaintiff's application for a conditional use permit to operate a hot-mix asphalt plant on the sixtieth day, July 20, 1998, but determined that specific conditions for the operation of the plant would be imposed later. *Id.* at 179. The planning commission later imposed those conditions on April 19, 1999. *Id.* at 180. The court found that the planning commission's action on July 20, 1998 was either an affirmative grant of approval or an approval by operation of law under § 15.99, however, in either case, the [county] was not precluded from subsequently imposing conditions on the permit. *Id.* at 181.

Other courts likewise have found that permits awarded by virtue of the deemed approved provision in a statute like § 15.99 can still be subject to certain conditions. *E.g., Levin v. Cocks*, 141 N.Y.S.2d 595, 596-97 (N.Y. Sup. Ct. 1955) (application for plat

---

[3] Section 7B-302A (E)(1) expressly provides that:

> Signs **shall** be located no closer than 750 feet from another permitted or nonconforming off-premises Sign on the same side of the highway.

was deemed approved after 45 days had elapsed without any action taken by planning board, however, plat application was still subject to other provisions requiring that certain conditions exist as to streets, roads and other health and safety measures). It thus appears that even if Brite Vue was entitled to the permit under the operation of law provision of § 15.99, Brite Vue would not escape the mandatory spacing requirement set forth in the new zoning ordinance governing off-premise signs for properties along the Interstate 35 corridor.

Accordingly, for all the foregoing reasons, the Court concludes that Brite Vue is not entitled to the declaratory judgment relief it seeks. Rather, the Court finds that the Township's permit approval of January 26, 2000, which was later re-issued on February 16, 2000 stands and that the permit is issued in Brite Vue's favor subject to the 750-foot spacing requirement.

## IV. First Come, First Served Policy

Brite Vue also challenges the Township's policy of processing the applications in question on a first-come, first-served basis. The record is clear that Eller was the first to file its sign permit application with the Township on the morning of December 3, 1999 and that it filed its application for an interim use permit three days prior to DeLite. As a result, the Township considered and approved the Eller application prior to the Brite Vue application. Brite Vue now contends that the first-come, first served policy employed by the Township for processing the permit applications is arbitrary and capricious and violates Brite Vue's procedural due process rights.

"The Court's authority to interfere in the management of municipal affairs is, and should be, limited and sparingly invoked." *White Bear Docking & Storage, Inc. v City of White Bear Lake*, 324 N.W.2d 174, 175 (Minn. 1982). The standard of review is whether the zoning authority's action was reasonable. *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 417 (Minn. 1981); *White Bear Docking*, 324 N.W.2d at 176. Minnesota caselaw expresses this standard in various ways: Is there a "reasonable basis" for the decision? or is the decision "unreasonable, arbitrary or capricious"? or is the decision "reasonably debatable"? *Honn,* 313 N.W.2d at 417.

The Court finds that the Township's first-come, first served policy for processing the applications in question is not arbitrary and capricious. Indeed, the state of Minnesota follows the same procedure. Minn. R. 8810.1300 ("The application for permit shall be filled out in its entirety and **all applications shall be processed in order of receipt**.") (emphasis added). Additionally, as the Township and Eller persuasively argued at the motion hearing, the first-come, first served policy has a long tradition in this country and is applied in countless areas of law, including determinations for immigration visas, trademark rights, land allocation and water rights. On this record, the Court finds that the process used by the Township is rational and does not violate Brite Vue's procedural due process rights.

## V. Moratorium

Counts II and III of Brite Vue's complaint pertain to the moratorium that the Township imposed on April 12, 2000. On that day, the Township voted and passed a motion to:

> maintain in place a moratorium on two signs — the southern most sign on the Taylor property [the Eller sign] and the northern most sign on the Houle property [the DeLite sign] — pending either — mutual agreement by the parties to be submitted in writing or in the alternative — a judge's order deciding on the placement of those signs.

Brite Vue contends that the Township's passage of the above-quoted moratorium was arbitrary, capricious, and invalid under state law. As relief, Brite Vue seeks an order from the Court directing the Township to rescind the moratorium. The Township has moved for summary judgment on these counts on the ground that Brite Vue's challenge to the moratorium will be mooted by the Court's order.

Upon review of the language of the moratorium and absent any argument from Brite Vue to the contrary, the Court agrees with the Township that Brite Vue's challenge to the moratorium is mooted by this order. The purpose of the moratorium was to maintain the status quo until the dispute between the placement of these signs was resolved. The moratorium explicitly states that "a judge's order deciding on the placement of [the] signs" would end the moratorium. The Court has now resolved that dispute. As a result, the Court fails to see any remaining live issue concerning the moratorium and accordingly grants this portion of the Township's motion for summary judgment.

For all the foregoing reasons, the Court concludes that Brite Vue is not entitled to an interim use permit free of the 750-foot spacing requirement by virtue of the "deemed approved" clause found in § 15.99, subd. 2 and that the Township's first-come, first served policy does not violate Brite Vue's procedural due process rights.

# ORDER

Based upon all of the files, records, the arguments of counsel and the proceedings herein, **IT IS HEREBY ORDERED** that:

1. The motion by Township of Columbus for summary judgment [Docket No. 20] is **GRANTED**;

2. The motion by Eller Media Company for summary judgment [Docket No. 24] is **GRANTED**;

3. The motion by Brite Vue for summary judgment [Docket No. 22] is **DENIED**.

**IT IS HEREBY DECLARED that** Eller Media Company has the right to erect and maintain an outdoor advertising structure on the Taylor property and that Brite Vue, its lessees, agents, and assigns are enjoined and prohibited from interfering with Eller's rights or constructing a sign within 750 feet of the Eller sign on the Taylor property.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: Dec 4, 2001
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge